UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | Criminal Action |
| | * | No. 08-269-03 |
| VS. | * | |
| | * | Shreveport, Louisiana |
| WENDY KATHLEEN BENSON | * | January 13, 2010 |
| CHRISS | * | 2:30 p.m. |
| | * | |

* * * * * * * * * * * * * * * * *

***SENTENCING***

Certified transcript of proceedings held before the Honorable S. Maurice Hicks, Jr., United States District Judge.

APPEARANCES:

*For the Government:* AUSA Allison Duncan Bushnell
U.S. Attorney's Office
300 Fannin Street, Suite 3201
Shreveport, Louisiana 71101-3068

*For the Defendant:* Mr. Ronald J. Miciotto
Miciotto, King & King
628 Stoner Avenue
Shreveport, Louisiana 71101

REPORTED BY: Marie M. Runyon, RMR, CRR
Federal Official Court Reporter
300 Fannin Street, Room 4212
Shreveport, Louisiana 71101
Phone: (318) 222-9203

PROCEEDINGS PRODUCED BY MECHANICAL STENOGRAPHY AND TRANSCRIBED BY COMPUTER.

(Court called to order with Defendant present at 2:31 p.m.)

THE COURT: Good afternoon. Please be seated.

Next on our docket is a sentencing hearing in the matter of United States versus Wendy Kathleen Benson Chriss. Ms. Bushnell is here for the government. Mr. Miciotto, you are here for the defendant. The defendant is present in court.

MR. MICIOTTO: That is correct, Your Honor.

THE COURT: We're here as a result of a guilty plea to Count 73 of the indictment, conspiracy to possess and to distribute in violation of 21, U.S.C., Section 846. The Presentence Report has been filed in this matter showing a net calculated offense level of 16, a criminal history category of 1, placing it into Zone D on the sentencing recommendation chart. That translates into a statutory period of confinement of zero to five years, a recommended period of confinement under the Guidelines of 21 to 27 months, supervised release, so forth and so on.

Now, that's a starting point, Mr. Miciotto. But we've got some objections to address.

MR. MICIOTTO: That is correct, Your Honor.

THE COURT: All right. I'm going to briefly state a summary of the objection as I understand it, Mr. Miciotto. If I'm wrong, please correct me in order that we can rule on these.

MR. MICIOTTO: Yes, sir.

THE COURT: As I understand it, the first Defense objection is to paragraph 32 of the Presentence Report, and basically it states that the paragraph fails to include a two-level reduction in the offense level despite the fact that she satisfies each of the criteria under the Sentencing Guidelines Section 5C1.2.

MR. MICIOTTO: That is correct, Your Honor.

THE COURT: The sentencing reduction of that two points, the Government's position in reply to your objection is that she's not entitled to that because of their evaluation of Ms. Chriss's information as being something less than "the whole truth and nothing but the truth." That is, there were no benchmarks where they could put a check mark by truthfulness across the board on the information that she provided.

Did I state that essentially correctly, Ms. Bushnell?

MS. BUSHNELL: Yes, Your Honor. That's a fair assessment.

THE COURT: It's not that she was untruthful, it's just that she was not forthcoming, intended to shelter or shield her participation in the overall conspiracy and "mess," so to speak, in this case.

Mr. Miciotto, do you have anything to add to that?

MR. MICIOTTO: Your Honor, my only reply to that --

May I?

THE COURT: Sure. Please come forward.

MR. MICIOTTO: -- is that when this matter originally came up and Webb, Mr. Webb, came to Dr. McElwee's office, Ms. Chriss happened to walk in that day to pick up some of her belongings.

It's our position she was no longer employed by Dr. McElwee at the time. However, the Government indicates that they felt like she was employed at the time, because the time records indicated that. However, Willis-Knighton didn't keep time records at that time. So there's some question about whether she was employed with Dr. McElwee at the time.

But at that point she was very truthful and spoke to Mr. Webb and gave him information at that time. Because at that time she believed that she was only doing what Dr. McElwee had instructed her to do.

Subsequent to that, we came up here and she was debriefed for about thirty -- three hours. And at that point, I believed that she was telling the truth.

The Government takes the position that when it came to the Jacobes, that she may have not given them all the information that they thought the Jacobes -- Jacobes' position was that she had maybe sold them drugs. Ms. Chriss denies that. And she gave the explanation that, on the phone records, that she was selling weight loss products to Ms. Jacobe. And I think the Government may have even confirmed that. I'm not

sure.

And that's where we had a breakdown concerning whether she was truthful or not. And Ms. Chriss wanted you to know that and make that part of the record, as to that particular issue.

THE COURT: All right. The Court notes that at the trial of this matter, that Ms. Chriss was not called by the government. And the Government has stated repeatedly its reasoning -- that they lacked confidence in the total truthfulness of the information that she had provided.

Likewise, the defendant, who had equal access to and could have subpoenaed Ms. Chriss to testify on behalf of the defendants, did not do so, making it difficult for either side to utilize her information, either for the prosecution or against the defendant or for the defendant and against the prosecution.

It is obvious to the Court that what level of information and, specifically, what information was provided during the course of her, at least, early cooperation was of such kind or character that neither side could rely totally on what she had told the government agents investigating this matter. Consequently, the Court does not believe that she is entitled to a two-level reduction based on the defendant's objection to paragraph 32. That objection is overruled.

MR. MICIOTTO: Your Honor, just may I have that noted

for the record at this time?

THE COURT: You may.

MR. MICIOTTO: Thank you.

THE COURT: I'm also going to note something at this particular time. If she was entitled to that two-point reduction -- the Court notes that the Guidelines are calculated at a raw level of 18 as a starting point. Because of acceptance of responsibility, she received a two-point reduction to put it to 16 on the chart, translating into a 21-to-27-month confinement sentence. If the Court sustained your objection, Mr. Miciotto, and she was eligible for the 14 offense level, that translates into a 15-to-21-month time for confinement as a recommendation. Purely advisory under the Guidelines. And the Court notes for the record that the 21 months are provided for in both of those Guideline sentences and will be taken into consideration at the time the sentence is passed.

MR. MICIOTTO: Yes, sir.

THE COURT: Your objection is noted.

The second objection, as I understand it, is that paragraph 34 of the PSR fails to provide a two-level reduction based on Section 3B1.2, because the contention is she was, at most, a minor participant in the events at issue.

Did I state that correctly?

MR. MICIOTTO: That is correct, Your Honor.

THE COURT: Ms. Bushnell, you have replied to that. And we actually have a calculation on the total number of pills that can be accounted for through the behavior and conduct of Ms. Chriss. Ms. Bushnell, any comment further on this? You can come forward.

MS. BUSHNELL: Your Honor, I believe my memo fairly states it, but just in a nutshell, the Defense has asked for either a minor or minimal participant reduction. And just based on the definitions in the Guidelines, I did not feel that Ms. Chriss met either one of those definitions. They require her to be substantially less culpable or less culpable than most other defendants. And in this case, there are eight defendants. Although the Government agrees that she's not as culpable as Tandy McElwee or Ava McElwee, we do believe she is at least as equal or more culpable than other defendants in the case. And that is why we felt that --

THE COURT: It does appear to the Court that the authority under which she acted with respect to Lortab and the cough syrups containing hydrocodone were derived from instructions or directives or authorizations provided by Dr. McElwee, directly, or Ava McElwee, who was a registered nurse practitioner.

MS. BUSHNELL: That is correct, Your Honor. And there's no doubt that none of the prescriptions would have been able to have been obtained without the doctor's authorization

and/or access that he gave to -- in this case, I'd say both access and specific authorization -- that he gave to Ms. Chriss. You know, being that, he is obviously more culpable than she is. However, there are still at least five other defendants that she's, you know, in each case at least equally culpable. And in some of those cases I would argue she is more culpable than those particular defendants.

THE COURT: There do appear to be different channels involved in this. It does appear, though, that Ms. Chriss controlled those channels based on authorizations from Dr. McElwee and his wife, Ava McElwee.

From what I can tell in putting together the information in the PSR and other information available to the Court, she was authorized and, in fact, obtained from Moore Medical Supply 20,000 Lortab tablets or caplets. That's just on the Internet. And all done using Dr. McElwee's credit card, as authorized by Dr. McElwee, but the person placing those orders and signing for them was Ms. Chriss. That's how I understand that worked. Is that correct?

MS. BUSHNELL: That is correct, Your Honor. The way it was set up was that Dr. McElwee actually signed a form indicating that Wendy Chriss had his authorization to place the orders. And the orders were shipped to the office, his office address, under his name and his DEA license. So he did give her specific authority. And I believe he testified at trial

that -- there are a few orders where only one 500-count bottle was, order was placed. But most of the orders, there were two bottles. And Dr. McElwee testified that he would keep one and that he gave Wendy the other one to put somewhere in the office.

THE COURT: The PSR may actually show 19,500 pills. However, that's a miscount, because the evidence that the government presented that we reviewed in chambers showed that it was a total of 20 bottles at 500 each, which would be a lot of pills. 500 more than what is shown here. Instead of 19 orders, it was actually 20. One was miscounted as a "1" and it was actually two bottles in the order.

MS. BUSHNELL: I think, Your Honor -- and I don't have that right in front of me, but I believe it was actually nine or ten orders. Maybe ten orders. I think there was a duplicate in -- there are duplications in the evidence. There's a summary, and then there were also individual orders. But needless to say, there were, correct, 1,000 pills being ordered at a time. There was a lot of --

THE COURT: And the testimony from Dr. McElwee was that one bottle he kept and stored on a shelf in his office behind books, where no one knew where it was -- which the Court questions -- and the second bottle was available for his staff and their families --

MS. BUSHNELL: That is correct, Your Honor.

THE COURT: -- based on his own testimony at trial. Then we have Ms. Chriss's involvement in either submitting prescriptions or picking up prescriptions from various local pharmacies under seven different names. And you add up that number and that's another 20,000, give or take, Lortab tablets.

MS. BUSHNELL: That is correct, Your Honor.

THE COURT: Does it appear to you, Ms. Bushnell, that Ms. Chriss was an integral part of all of the activities and, potentially, multiple conspiracies involving the obtaining and distribution of Lortab, hydrocodone?

MS. BUSHNELL: Yes, Your Honor, I do believe that.

THE COURT: Can you classify her as a minor or minimal participant?

MS. BUSHNELL: No, Your Honor. In this instance, in this conduct, I do not think that she could be classified in that way. I don't believe that -- and she was not assessed a leadership role. And I think that is correct, because although in some ways she took more of a lead role than other people did, it didn't qualify for a leadership role under the Guidelines. And I think that that was a correct assessment. But I still -- I don't believe, under the definitions, the Guidelines take into effect all the conduct of all the different defendants in this case, and nondefendants; that I don't believe she can be classified as a minor or a minimal participant.

THE COURT: In this instance, it does appear that she was the conduit through which many of the tablets or pills were obtained illegally, either through false prescriptions, or signing for false prescriptions, or ordering them from the pharmacies, or getting the bottles from Moore Medical Supply. I also find that she is not a minor or minimal participant.

But the Court also notes that she did not play the role of a leader in the conspiracy, because she obviously is operating with the authority of the two people above her in "rank," so to speak. That would be Ava Cates McElwee and Dr. Tandy McElwee. The Court believes that she does not qualify as a leader, so no additional point should be scored as well. Just so the record is clear on that.

Mr. Miciotto, any short reply to that?

MR. MICIOTTO: I do, Your Honor. As I indicated to the Court earlier, I just wanted the Court to know that this young lady came to work at Dr. McElwee's office at the age of 19, not even with a GED. She worked on her GED and obtained the GED. She worked there until she was 31 years of age. He -- Dr. McElwee was a family friend. She just did --

THE COURT: She actually obtained an associate degree as well.

MR. MICIOTTO: She did.

THE DEFENDANT: After.

MR. MICIOTTO: The associate degree came after all

this.

But I think he used her. He, as a family friend -- and with all due respect to her, she was fairly uneducated at the time. And he took -- she just did what he told her to do. So, in my opinion -- she was not an organizer, not a leader or manager, and she surely wasn't a supervisor of anyone. So I think that she is a minimal participant in this activity, even though everything seemed to flow to her. It's because she was the family friend.

THE COURT: It does not appear, though, she offered any protest to that role during the course of the conspiracy. And from the information supplied at trial by testimony and by documentation, it appears the conspiracy was going on for quite a bit longer than the time period alleged in the indictment. And the roughly 40,000 pills that we're talking about that are channeled through Ms. Chriss is only for the time of the indictment. It doesn't go outside of that or beyond it back in time.

Whether she is a family friend and was so-called vulnerable to the abuse of trust by Dr. McElwee and by the nurse practitioner, Ava Cates McElwee, the vulnerability, while she started at age 19, she was 31 by the time all of this "dissolved," so to speak. 30 or 31. And the Court's going to overrule the objection.

The Court also notes that had the two-level reduction

been allowed in this particular instance, that, again, it would result in a Level 14 and a 15-to-21-month sentence.

MR. MICIOTTO: Yes, sir.

THE COURT: The 21 months does coincide or interlock, rather, with the 21 to 27 months under the calculated offense level of 16, and we'll address that later.

MR. MICIOTTO: Thank you, Your Honor. I would object to that ruling.

THE COURT: So noted.

There's a conclusory objection that the total offense level should be 12. The ruling on each of the two previous objections stands. Therefore, that objection is overruled based on the reasons that have been previously provided to the two previous objections.

There is a, I call it a "corollary objection" to paragraph 68 based on the claimed correct offense level of 12. Once again, just for the record being complete, for reasons previously stated, the objection to paragraph 68 is likewise overruled. Do you feel the need to add anything at this point?

MR. MICIOTTO: No, sir. I think we adequately covered it, Your Honor.

THE COURT: I just want to make sure we're doing this in the right order and taking care of this.

Now, the last objection pertains to paragraphs 82 and 83, and has to do with mitigating factors under Section 3553(a)

of Title 18 of the U.S. Code demonstrating that a Guideline sentence in this case is greater than necessary. The Defense contention is basically that her family ties and drug addiction are factors to be considered.

Ms. Bushnell, you want to --

Did I state that correctly, first, Mr. Miciotto?

MR. MICIOTTO: You did, Your Honor.

THE COURT: Anything to add to that? That's the starting point for where our argument kind of begins.

MR. MICIOTTO: No, sir.

THE COURT: Ms. Bushnell, do you have any comment with respect to that objection?

MS. BUSHNELL: Your Honor, the Government would merely state that the Guideline range -- we believe the Guideline range was sufficiently calculated. It is -- if you consider the 3553(a) factors, it is not a sentence that is so great that it would be unreasonable under those factors. And we believe that a Guideline -- the Guideline range sentence would be appropriate in this case.

THE COURT: All right. Anything further, Mr. Miciotto?

MR. MICIOTTO: No, sir.

THE COURT: The Court notes that family ties and/or substance dependence, chemical dependence, are not ordinarily considered as mitigating factors under Section 3553(a). The

defendant's contention that any period of incarceration, quote, will tear apart an otherwise strong family unit, end quote, is not supported by facts or evidence of extraordinary circumstances existing in this case that would warrant the relief requested.

The Court finds, based on the supporting letters received and read by the Court on behalf of Ms. Chriss, that her family members appear to be very supportive. There are no allegations that the defendant's minor children will be left completely without care. It appears that other family members will take up that slack in the event that an incarceration sentence is imposed.

It does appear from the time of her guilty plea that the Court was made aware of her continuing therapy for substance abuse treatment on a believed twice-a-week basis, and the Court noted at that time that that treatment or therapy must continue or she would be taken into custody. It appears to me, now having gotten to this point at the time of sentencing, that she has fulfilled that requirement by the Court and has continued that substance abuse counselling program. The Court, therefore, finds under these circumstances and facts that she is not entitled to a departure from the Guideline range under Section 3553(a) or under the Guidelines themselves.

The Court, therefore, finds that after reviewing the

objections filed by counsel, and with each of those objections being overruled for the reasons stated, that the PSR calculated offense level of 16, the characterization of her criminal history as Roman numeral I or a first-time offender, translating into a recommended Guideline range sentence of confinement 21 to 27 months, is accurate.

Subject to those objections, is that your conclusion as well, Mr. Miciotto?

MR. MICIOTTO: Yes, sir.

THE COURT: Ms. Bushnell?

MS. BUSHNELL: Yes, Your Honor.

THE COURT: All right. The Court has reviewed additional sentencing materials in the form of letters of support and information by family members and friends of Ms. Chriss. Are there any additional ones to be presented to the Court at this time for review?

MR. MICIOTTO: No, sir.

THE COURT: Ms. Bushnell, do you have any other comment to present at this time?

MS. BUSHNELL: Nothing further, Your Honor.

THE COURT: All right. We are now down to personal remarks. Mr. Miciotto, you have the opportunity to speak on behalf of your client. And, certainly, Ms. Chriss has an absolute right to address the Court, if she chooses to do so.

MR. MICIOTTO: Your Honor, she chooses to do. And

may she remain seated while she speaks to the Court?

THE COURT: Based on the information you provided to me earlier off the record, yes, she may remain seated.

MR. MICIOTTO: Thank you, Your Honor.

THE DEFENDANT: I began working for Dr. McElwee when I was 19. He was a family friend of my parents. When I went to work for him, I trusted him. He was a father figure. The standard of practice in his office was prescribing large amounts of narcotics. And throughout this investigation, they've centered solely on the staff when the patients received just as much as the staff. It was standard practice in his office.

I know that I'm responsible for my actions, and I know now the choices that I should have made. However, at that time I trusted him.

We all had the same duties. All of the employees -- the medical assistants, the LPN that worked in that office -- we all had the same duties. I did not carry out any more duties than they did, other than the prescriptions or the pills that were ordered online.

One of the -- but the pills that were ordered in the office, we had a pharmacy that was a delivery service. They delivered these prescriptions to the office. Different staff members signed for these prescriptions. I did not order them all. The prescriptions that were in my name, yes, I did take.

The prescriptions that were given to Dr. McElwee in several different names, I had no knowledge of whether he took those for himself or whether they were actually given to patients. So I'm confused as far as relevant conduct and coming up with the quantity of medications when deciding quantity.

After I left Dr. McElwee's office, I did pursue a degree in nursing, as I'd planned on doing, and successfully completed the program. At that time, I learned a lot about what was wrong in our office. But it was normal. It was normal for ten years. I trusted him, and . . .

I know that I should have made better choices, and I would never do that again. And at any time if someone would have said, "Do not do that," I would have never done it again. I have never committed a crime.

I'm very close to my children. I have a son that has severe ADHD. I know that we have a good support system and people to help us, but it's not the same. And I beg you, Your Honor, I'm willing -- in respect to any decision you make regarding my sentencing, I just respectfully request not to take me away from my children. I will do anything that you ask.

But I didn't -- it was not, as the Prosecution has stated, a big drug ring. These were prescriptions that were prescribed by him. And I did not take all of those pills. And I'm -- I know what I've done was wrong. And I'm just begging

you, do not take me away from my children. They cannot handle that.

THE COURT: Anything further?

MR. MICIOTTO: No, sir. Your Honor, may I get a (indicating)?

THE COURT: You certainly may.

(Clerk hands Kleenex to Mr. Miciotto.)

THE COURT: Ms. Bushnell, any comment on behalf of the government?

MS. BUSHNELL: No, Your Honor.

THE COURT: Ms. Chriss, it falls to the Court to impose a sentence not greater than necessary to accomplish the overarching aims of sentencing in view of the guilty plea that has been entered here.

In this instance, your statement confirms to the Court the belief that this drug distribution effort under the guise of a medical license had been going on for far longer than the time periods alleged in the indictment. Your statement confirms that.

In this instance, the ten-year pattern of behavior, as you described it, may well have involved patients, many of whom had legitimate medical needs, perhaps many of whom did not have legitimate medical needs. But the pattern of drug distribution under the guise of a medical license and medical practice is of great concern to the Court.

It does appear to me, Ms. Chriss, that you are one of the point people that made this distribution system work. And while you began work for Dr. McElwee at the age of 19 through about age 30 or 31, the Court believes that your participation willingly in this conspiracy, despite your trust placed with Dr. McElwee as a family friend, led you into substance abuse problems as well as assisting other people in obtaining Lortabs and other hydrocodone-containing medications, including cough syrups, that helped feed their own addictions. And I can't ignore that.

In this instance, the Court does adopt the factual findings of the probation office as contained in the Presentence Report and its addendum.

Ms. Chriss, I am aware that you need substantial counselling and therapy with respect to your substance abuse. It impacts you negatively. Your activity in this has destroyed one segment of a possible work career. And it has negatively impacted your family. To be a mother who is a drug addict at the same time is simply unacceptable.

The Court finds at no time during the period of the conspiracy or the ten-year so-called pattern of behavior was there ever help sought on substance abuse. It appears to the Court that you fall, unfortunately, into the category of those people who are substance abusers who fail to acknowledge the problem in a timely manner where it can be addressed. As a

result, the sentence that I'm going to impose is going to allow you to seek drug counselling.

Pursuant to the Sentencing Reform Act of 1984, the defendant, Wendy Kathleen Benson Chris, is hereby committed to the custody of the Bureau of Prisons for a term of 21 months, which is the minimum amount of time recommended under the Guidelines.

The Court believes that the Guidelines in this instance adequately captured factors on a personal level which are adequate to deal with the role of your participation, the extent of your participation, and the willingness to continue participation in this particular drug distribution scheme under the guise of a medical license by Dr. Tandy McElwee and under the partial direction of his wife, a registered nurse practitioner, Ava Cates McElwee. This sentence was selected in order to accommodate the statutory and Guidelines requirements, as well as to best serve the interests of justice in this matter.

I am aware that you have children living with you at home. Although I am also quite sure that placing your children first is not what you did when you became a drug addict. You placed yourself and those selfish interests and chemical dependencies above your family. You weren't concerned with the outcome of them on your family.

Additionally, the sentence was selected after

consideration of the factors contained in Title 18 of the United States Code, Section 3553(a), pertaining to your lack of criminal history, your personal characteristics, as well as included in that your involvement in the instant offense.

Upon release from confinement, you are placed on supervised release for a period of three years. Within 72 hours following your release from custody, the defendant is ordered to report to the U.S. probation office in the district into which you are released.

While on supervised release, you shall not commit another federal, state, or local crime, shall not possess a firearm or dangerous weapon, and shall comply with the standard conditions of supervision as adopted by this court.

As a special condition of supervised release, you are ordered to participate in a substance abuse treatment program as directed by the U.S. probation office, to include Antibuse and drug surveillance, if indicated, and/or inpatient treatment, as deemed necessary by the U.S. probation office.

Second, you are ordered to surrender any and all licenses and certifications to practice in the health care field within the United States.

The defendant shall not seek or obtain or have reinstated any licenses or practice any form of medical care or nursing care or controlled substance handling and/or dispensing privileges during the time of your supervision.

Due to the defendant's financial status and the fact that a confinement sentence has been ordered, no fine in this matter is imposed. The Court orders that it is waived. The defendant by law, however, shall pay a $100 special assessment, which is payable immediately to the Crime Victim Fund, to the United States District Court clerk.

As per the plea agreement, it's my understanding that all remaining counts are to be dismissed. Ms. Bushnell, is that so?

MS. BUSHNELL: That is correct, Your Honor.

THE COURT: All remaining counts in the indictment against this defendant are hereby ordered dismissed.

I need to notify you of your right to appeal, Ms. Chriss. If a notice of appeal is filed under Title 18 of Section 3742 for a review of your sentence, the clerk is directed to transmit the Presentence Report under seal -- because it contains personal and confidential information about you -- to the Court of Appeal.

Mr. Miciotto, it falls on your shoulders in order to counsel with her whether to file an appeal or not.

The Court notes, for the record, that the 21-month sentence overall appears to be the correct amount of time, considering all of the factors under all of the circumstances in this case. As previously noted, the 21 months is so-called interconnected or interlocked with the point at which the Court

could have granted a two-point reduction.

In this instance, I need to also tell you that you've only got about ten days from the entry of judgment, which is an exceedingly short period of time, in order to make a decision on whether to appeal or not. Mr. Miciotto will advise you on that. And if the decision is made to appeal -- either your sentence or guilty plea or any parts of it -- he will have the responsibility of filing a notice of appeal timely.

As to who prosecutes that appeal on your behalf is a separate matter between you and Mr. Miciotto. In the event that you cannot afford an attorney to prosecute an appeal, the Federal Public Defender's Office will be appointed, as a matter of caution, to be sure that no dates or deadlines or filings of any sort are missed. I'm going to require that you talk to the Federal Public Defender's Office -- your attorney will help you schedule that appointment -- in order to determine whether you qualify for the Federal Public Defender's Office to prosecute any appeal that you decide to take.

Finally, I'm going to notify you that you are scheduled to report to the designated institution on or before 2:00 p.m. on Friday -- excuse me -- on February 22, 2010. I need to also advise you that failure to report to the designated institution by the Bureau of Prisons constitutes a separate felony offense for which penalties are far harsher than the ones imposed in connection with the activities in this

drug conspiracy.

Mr. Miciotto, is there any reason why this sentence as stated should not be imposed, subject, of course, to your objection?

MR. MICIOTTO: Other than, Your Honor, we object to the Court's ruling.

February 22, 2010, at 2:00 p.m.?

THE COURT: 2:00 p.m. And the Bureau of Prisons may have time to actually designate an institution by that time, but that will be handled by the Bureau of Prisons.

MR. MICIOTTO: Yes, sir. Thank you.

THE COURT: I'm going to also recommend that you participate in a 100-hour drug treatment program. I cannot order you to do so. I would like to. You need it. You actually are in need of the 500-hour program. In this instance, to qualify for the 500-hour program, you would have to be sentenced to a period of time of incarceration far longer than the Court has ordered. Under the circumstances, there is a 100-hour program available I hope you will participate in.

The Bureau of Prisons will score you in your evaluation based on what they see in the Presentence Report and whether you first are residing in a federal prison camp, as opposed to a low-security facility. I am hopeful that the institution they send you to will have that 100-hour program. I need to tell you there's a waiting list of prisoners to get

on that program as well.

So please be sure that in the processing phase, that if you are offered an opportunity to participate in that program, that you get on that list, participate in it, and complete it. You will need it as you return to life outside of federal custody and begin a life free from drugs, which will be of benefit to you as well as to your family. That's my hope.

Ms. Bushnell, any reason why the sentence as stated should not be imposed?

MS. BUSHNELL: No, Your Honor.

THE COURT: The sentence is ordered imposed as stated.

Any further matters to come before the court this afternoon in this or any other case?

MS. BUSHNELL: Not from the Government, Your Honor.

THE COURT: Mr. Miciotto?

MR. MICIOTTO: No, sir.

THE COURT: We are adjourned. Thank you.

(Proceedings concluded at 3:10 p.m.)

**Certificate**

I hereby certify this 1st day of February, 2010, that the foregoing is, to the best of my ability and understanding, a true and correct transcript from the record of proceedings in the above-entitled matter.

/s/ Marie M. Runyon
Official Court Reporter