RECEIVED
AUG 05 2011
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

United States Court of Appeals
Fifth Circuit
FILED
July 12, 2011

Lyle W. Cayce
Clerk

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

No. 10-30101

---

D.C. Docket No. 5:08-CR-269-3

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

WENDY KATHLEEN BENSON CHRISS,

Defendant - Appellant

Appeal from the United States District Court for the
Western District of Louisiana, Shreveport

Before JOLLY and HAYNES, Circuit Judges, and VANCE*, District Judge.

## JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

A True Copy
Attest 03 AUG 2011

Clerk, U.S. Court of Appeals, Fifth Circuit
By: Dantrell Johnson
Deputy

New Orleans, Louisiana

ISSUED AS MANDATE: 03 AUG 2011

---

*Chief Judge of the Eastern District of Louisiana, sitting by designation.

United States Court of Appeals
Fifth Circuit
**FILED**
July 12, 2011

Lyle W. Cayce
Clerk

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 10-30099

D.C. Docket No. 5:08-CR-269-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

AVA CATES MCELWEE,

Defendant - Appellant

Appeal from the United States District Court for the
Western District of Louisiana, Shreveport

Before JOLLY and HAYNES, Circuit Judges, and VANCE*, District Judge.

## JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

A True Copy
Attest 03 AUG 2011

ISSUED AS MANDATE: 03 AUG 2011

Clerk, U.S. Court of Appeals, Fifth Circuit
By: Dantrell Johnson
Deputy

New Orleans, Louisiana

*Chief Judge of the Eastern District of Louisiana, sitting by designation.

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
July 12, 2011

Lyle W. Cayce
Clerk

No. 10-30099

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

TANDY W. MCELWEE, JR.; AVA CATES MCELWEE,

Defendants - Appellants

---

Consolidated with 10-30101

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

WENDY KATHLEEN BENSON CHRISS

Defendant - Appellant

Appeals from the United States District Court
for the Western District of Louisiana

Before JOLLY and HAYNES, Circuit Judges, and VANCE, District Judge.*

* Chief Judge of the Eastern District of Louisiana, sitting by designation.

E. GRADY JOLLY, Circuit Judge:

Before the court are three former employees of a private medical practice who stand convicted for engaging in a conspiracy to fraudulently obtain large amounts of hydrocodone, a controlled dangerous substance. The conspiracy involved submission of fabricated prescriptions to local pharmacies and falsification of patient medical records to conceal the fraudulence of the prescriptions. Appellants were found guilty of various charges, including conspiracy to obtain a controlled substance by fraud, and were sentenced to respective terms of imprisonment. All three Appellants challenge their sentences, and one Appellant contests the grounds for her conviction as well. For the reasons that follow, we AFFIRM on all issues.

I.

Appellant Tandy McElwee ("Dr. McElwee") was an OB/GYN physician who maintained a practice in Bossier City, Louisiana. There he supervised 13 employees including his wife, Appellant Ava McElwee ("Mrs. McElwee"), a nurse practitioner, and Appellant Wendy Chriss ("Chriss"), a registered medical assistant. Dr. McElwee was authorized by the U.S. Drug Enforcement Administration ("DEA") to prescribe lawful controlled substances, but he did not have a license to dispense controlled substances from the State of Louisiana.

Over a period of years, employees of the medical practice employed a variety of fraudulent means to obtain hydrocodone medications including Lorcet, Lortab, Histussin HC, and Histinex HC, all of which are schedule III controlled dangerous substances. To effectuate this conspiracy, Dr. McElwee made available to his employees pre-signed prescription pads, which were used to request refills of these hydrocodone-containing drugs from various pharmacies. Trial testimony suggested that the atmosphere in Dr. McElwee's office was one that accepted and accommodated the daily use of hydrocodone.

The coconspirators were able to obtain large amounts of hydrocodone medication by submitting pre-signed "prescriptions" in the names of fictitious persons, other family members, and in one case, even a family dog. For example, Chriss ordered hydrocodone using names like Kathleen Benson (her middle and maiden name), Eddie Chriss (her husband), Ayden Chriss (her child), Kristina Randall (her sister), and Rochelle Petouski (an alias for her sister). Dr. McElwee secured hydrocodone for himself and others by having his medical assistant, Rebecca Sandifer, go to the pharmacy to pick up prescriptions in the names of Sandifer's children and her ex-husband. He also ordered prescriptions using the name of his dog "Brandi" and his daughter-in-law, Conchita McElwee. When questioned by a pharmacist, Dr. McElwee represented that "Brandi McElwee" was a patient under his care.

Dr. McElwee authorized Chriss to order hydrocodone via the Internet from Moore Medical, LLC, and he testified that he kept a large 500-count bottle in his office for personal use and gave another 500-count bottle to Chriss for use by office personnel or their family members. Although Mrs. McElwee's level of involvement in these schemes was disputed, many prescriptions—including for Lortab and Histussin HC—were filled out in her name, and she often retrieved the medications from the pharmacy. Another employee testified that she delivered prescriptions to Mrs. McElwee, and the jury apparently credited the trial testimony suggesting that Mrs. McElwee knew of and participated in the conspiracy.

Dr. McElwee's staff frequently submitted prescriptions to QVL Pharmacy (which was originally named "Safescript"). In June 2007, the Louisiana State Board of Medical Examiners ("LSBME") issued subpoenas to QVL and to Dr. McElwee's office for approximately 22 patient records, including requests for the patient records of Dr. McElwee's staff and for the family members and fictitious "patients" under whose names the prescriptions had been filled. An employee

of QVL notified Chriss about the LSBME subpoenas and sent Chriss a fax containing the details of prescriptions QVL had filled for Dr. McElwee's office. Based on these records from the pharmacy, Chriss and other employees altered and falsified patient records to account for the prescriptions filled by QVL. Certain patient charts were fabricated wholesale, including those of "Rochelle Petouski" and "Missy Davis." Furthermore, the record indicates that Mrs. McElwee participated in the falsification of patient records, specifically with respect to Conchita "Brandi" McElwee (the family dog's name apparently having been added to the chart for Dr. McElwee's daughter-in-law).[1] These falsified records were submitted in response to the LSBME subpoena. In addition, Chriss created a dispensation log book with false names and prescription dates, at Dr. McElwee's request, in order to account for the hydrocodone ordered through Moore Medical. Another employee testified that Mrs. McElwee said Chriss was "going to save our ass with that book."

Appellants were indicted along with five other codefendants in an 88-count indictment that included charges for conspiracy to obtain a controlled substance by fraud and conspiracy to possess with intent to distribute a controlled substance. Under a plea agreement, Chriss pleaded guilty to one count of conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1). A jury found Dr. McElwee guilty of one count of conspiracy to obtain a controlled substance by fraud, in violation of 21 U.S.C. §§ 846 and 843(a)(3); nineteen counts of obtaining a controlled substance by fraud, in violation of 21 U.S.C. § 843(a)(3) and 18 U.S.C. § 2; one

---

[1] The chart for Conchita McElwee is noteworthy in that two witnesses identified Mrs. McElwee's handwriting on an exam note in the chart. The note represents that "Conchita Brandi McElwee" came in for a vaginal examination and was prescribed Lortab for menstrual cramps, but Conchita—whose full name is actually Conchita Maria Iglesias McElwee—testified that she did not go by the name Brandi, that she never had a vaginal examination by Tandy or Ava McElwee, that she did not have problems with menstrual cramps, had never been prescribed Lortab, and did not use the QVL pharmacy.

count of conspiracy to possess with intent to distribute; nine counts of possession with intent to distribute a controlled dangerous substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; one count of providing false information in records required to be kept under Title 21, in violation of 21 U.S.C. § 843(a)(4)(A) and 18 U.S.C. § 2; and one count of health care fraud, in violation of 18 U.S.C. §§ 1347 and 2. The same jury found Mrs. McElwee guilty of one count of conspiracy to obtain a controlled substance by fraud and one count of obtaining or acquiring a controlled substance by fraud.

At sentencing, the district court adopted the factual findings of the Presentence Investigation Report ("PSR") with respect to Dr. McElwee and assessed an offense level of 20 and criminal history category of I. The court granted the Government's motion for an upward variance from the Sentencing Guidelines range of 33 to 41 months, noting that points had not been assessed for inclusion of false information in a record required to be kept, and that the 32,000 easily identifiable units of hydrocodone were "probably the tip of the iceberg." Considering his role and the nature of the offense, the court sentenced Dr. McElwee to a total of 60 months in prison and a $550,000 fine, up to $400,000 of which is to be paid jointly and severally with Mrs. McElwee.

Mrs. McElwee was assessed an offense level of 8 with a criminal history category of I, which yielded a Guidelines range of zero to six months. The court ultimately imposed a non-Guidelines sentence of 36 months of imprisonment and a $400,000 fine to be paid jointly and severally with Dr. McElwee.

As to Chriss, the district court adopted the factual findings of the PSR and assessed an offense level of 16 with a criminal history category of I, imposing a 21-month sentence of imprisonment followed by three years of supervised release, which was at the bottom of the Guidelines range.

Dr. McElwee and Chriss timely appeal their sentences, while Mrs. McElwee appeals both her conviction and her sentence. We have jurisdiction under 28 U.S.C. § 1291.

II.

At the core of Appellants' complaints on appeal are their challenges to the substantive reasonableness of their sentences. We review the reasonableness of a defendant's sentence for abuse of discretion. *See United States v. Gall*, 552 U.S. 38, 46, 51 (2007). We "first ensure that the district court committed no significant procedural error" and then analyze substantive reasonableness by considering "the totality of the circumstances, granting deference to the district court's determination of the appropriate sentence based on the § 3553(a) factors, and we may not reverse the district court's ruling just because we would have determined that an alternative sentence was appropriate." *Id.* at 51 (internal quotation marks, citations, and modifications omitted). We now turn to address the issues raised by the Appellants.

A.

We first consider the claims of Dr. McElwee, who challenges the reasonableness of his prison sentence and the fine imposed by the district court.

1.

Dr. McElwee first contests the length of the 60-month sentence imposed by the district court. We note, at the outset, that the district court did not commit any procedural error such as failure to calculate the Guidelines range or failure to consider the § 3553(a) factors.[2] As to substantive reasonableness, we consider the totality of the circumstances, including the extent of any deviation from the Guidelines range, while affording "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent

[2] Indeed, Dr. McElwee does not allege any procedural error.

of the variance." *United States v. Diaz*, 637 F.3d 592, 603 (5th Cir. 2011). The factors a court shall consider in devising an appropriate sentence include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(1)–(2). Other considerations are "the kinds of sentences available," § 3553(a)(3); the Guidelines, § 3553(a)(4); "any pertinent policy statement" issued by the Sentencing Commission, § 3553(a)(5); "the need to avoid unwarranted sentence disparities," § 3553(a)(6); and "the need to provide restitution to any victims," § 3553(a)(7).

Dr. McElwee argues that the district court did not appropriately weigh all the relevant § 3553(a) factors. Specifically, he contends that the court did not give adequate weight to his lack of criminal history, that "there was no evidence of a widespread distribution network traced back to [his] office," and that Dr. McElwee's abuse of trust had already been factored into the PSR's Guidelines evaluation. He further argues that the district court's attempt to send a message to the medical profession unduly punished him for his "socioeconomic status."

After considering these arguments, we nevertheless conclude that the district court did not abuse its discretion. Although a 60-month sentence is a substantial deviation from the Guidelines range of 33 to 41 months, it is "commensurate with the individualized, case-specific reasons provided by the

district court." *United States v. Herrera-Garduno*, 519 F.3d 526, 531 (5th Cir. 2008). In justifying its decision, the district court observed that the Guidelines offense level did not take into account conduct such as the inclusion of false information in a record required to be kept, the fabrication and altering of patient medical charts, or health care fraud.[3] Dr. McElwee also granted unlimited access to employees to obtain hydrocodone, and thus substantially more units of the controlled substance could have been attributed to him to increase his base offense level. In the light of these and other considerations set forth in the extensive colloquy with defense counsel at sentencing, the district court observed that the Sentencing Guidelines "did not capture the kind of special circumstance . . . presented by the evidence." We afford due deference to this determination, particularly in the light of Dr. McElwee's failure meaningfully to distinguish this case from others in which we have affirmed similar, and proportionately greater, upward deviations from the Guidelines. *See, e.g.*, *Brantley*, 537 F.3d 347; *Herrera-Garduno*, 519 F.3d 526; *United States v. Smith*, 440 F.3d 704 (5th Cir. 2006).

2.

Dr. McElwee next challenges the $550,000 fine assessed by the district court. Although he leveled a general objection to his sentence, Dr. McElwee did not file a specific objection to the $550,000 fine at sentencing.[4] We therefore

---

[3] The Government's sentencing memorandum contained the further observation that there had been no enhancement for obstruction of justice despite Dr. McElwee having denied many of his actions at trial.

[4] Counsel for Dr. McElwee claims that he had no notice that the district court was contemplating imposing such a large fine. This argument, however, is irrelevant. The Government filed a motion for a non-Guidelines sentence in this case and asked the court to impose a "substantial fine." Even where the Government does *not* move for a non-Guidelines sentence, "sentencing courts are not required to give pre-sentencing notice of their *sua sponte* intention to impose a non-Guidelines sentence." *United States v. Mejia-Huerta*, 480 F.3d 713, 723 (5th Cir. 2007). Moreover, at the very beginning of the sentencing hearing and well before announcing the fine, the district court gave notice that "[t]here is also the possibility of a

review the reasonableness of the fine for plain error. *See United States v. Brantley*, 537 F.3d 347, 351 (5th Cir. 2008); *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009) ("To preserve error, an objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction."). The Guidelines provide that a fine shall be imposed "in all cases," except where the defendant establishes an inability to pay. The burden of establishing an inability to pay is on the defendant. *United States v. Landerman*, 167 F.3d 895, 899 (5th Cir. 1999). The factors a sentencing court shall consider when imposing a fine are set forth in U.S.S.G. § 5E1.2(d).[5]

Dr. McElwee argues that the $550,000 fine is unreasonable because it far exceeds the $75,000 maximum for his offense level of 20, as suggested in the Guidelines. The PSR shows that Dr. McElwee's net worth is $119,477.80, with

---

[$250,000-per-count] fine for these particular counts . . . ."

[5] Specifically, these considerations are:

> (1) the need for the combined sentence to reflect the seriousness of the offense (including the harm or loss to the victim and the gain to the defendant), to promote respect for the law, to provide just punishment and to afford adequate deterrence;
>
> (2) any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources;
>
> (3) the burden that the fine places on the defendant and his dependents relative to alternative punishments;
>
> (4) any restitution or reparation that the defendant has made or is obligated to make;
>
> (5) any collateral consequences of conviction, including civil obligations arising from the defendant's conduct;
>
> (6) whether the defendant previously has been fined for a similar offense;
>
> (7) the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed; and
>
> (8) any other pertinent equitable considerations.

U.S.S.G. § 5E1.2(d). Furthermore, "[t]he amount of the fine should always be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive." *Id.*

total debt of over $150,000. Although the PSR does not contain a recommendation regarding an appropriate fine amount, Dr. McElwee asserts that the PSR shows his "obvious inability . . . to pay anything close to" what was assessed, and that the district court erred by failing to make explicit factual findings justifying the deviation.

Dr. McElwee's argument is unavailing. Although the $550,000 fine is above the Guidelines range, the PSR reflects that Dr. McElwee has a monthly income of $22,240 through a personal disability policy, and that this policy will pay him at least $16,000 per month until his death.[6] "Normally, a district court does not have to express reasons for imposing a fine as long as it is shown that the judge considered the defendant's ability to pay." *United States v. Voda*, 994 F.2d 149, 155 n.14 (5th Cir. 1993). In this case the district court considered Dr. McElwee's ability to pay and adopted the facts in the PSR, which reflected an income on disability that easily covers—indeed, far exceeds—the fine amount, even when we limit our consideration to Dr. McElwee's expected income from this policy while serving his prison sentence.[7]

As noted above, in granting the Government's motion for a non-Guidelines sentence, the district court explained that the Guidelines offense level did not take into account conduct such as the inclusion of false information in a record required to be kept, the fabrication and altering of patient medical charts, or health care fraud. Moreover, although the fine exceeds the Guidelines range, it is well within the statutory maximum fine of $250,000 on each count of Dr. McElwee's conviction. For these reasons, and because Dr. McElwee has failed

---

[6] Furthermore, it bears noting that the magnitude of the fine is diminished—and Dr. McElwee's ability to pay correlatively augmented—by the district court's decision to make Dr. McElwee and Mrs. McElwee jointly and severally liable for the $400,000 portion of the fine pertaining to the two counts on which they were both convicted.

[7] Dr. McElwee has made no effort to show that there will be any interruption in his receipt of disability payments during his prison term.

to meet his burden of demonstrating an inability to pay, we conclude that the district court did not err in imposing a fine of $550,000.[8]

B.

We next turn to Mrs. McElwee, who contests both her conviction and her sentence. She disputes the sufficiency of the evidence for her conviction, the instructions given to the jury, and the reasonableness of her sentence.

1.

Mrs. McElwee was convicted of conspiracy to obtain and of obtaining or acquiring a controlled substance by fraud. She appeals the district court's denial of her motion for judgment of acquittal, arguing that the evidence against her was constitutionally insufficient to support a conviction under *Jackson v. Virginia*, 443 U.S. 307 (1979). "A challenge to the sufficiency of the evidence that is procedurally preserved, as this challenge was, is reviewed *de novo*." *Diaz*, 637 F.3d at 602. "Viewing all the evidence and drawing all inferences and credibility determinations in the light most favorable to the verdict, we determine whether a rational jury could have found that the evidence established the elements of the offense beyond a reasonable doubt." *Id.* (internal quotation marks and citations omitted). Mrs. McElwee asserts "that record-keeping in the office was admittedly poor, that Dr. McElwee admitted using his wife's name to get prescriptions for himself, that there was no evidence introduced that Ava McElwee's charts specifically were altered," and that the evidence supporting her role in altering patient records "was inconsistent and confusing."

As an initial matter, we note that many of the issues Mrs. McElwee raises involve credibility determinations that are decidedly matters for the jury. *See*

---

[8] For the same reasons, we alternatively hold—assuming that Dr. McElwee's objection to his sentence was sufficiently specific to alert the district court to the nature of the error alleged—that the $550,000 fine was not an abuse of discretion.

*United States v. Dadi*, 235 F.3d 945, 951 (5th Cir. 2000) ("The credibility of witnesses is a matter for the jury and its determinations demand deference."). Moreover, the district court clearly set forth the evidence supporting Mrs. McElwee's conviction on both the conspiracy and the fraudulent acquisition charges in its memorandum ruling on Mrs. McElwee's motion. Specifically, the court noted the existence of at least ten pharmacy signature logs purporting to show that Mrs. McElwee signed for hydrocodone prescriptions, the amounts of which were strikingly inconsistent with her own medical charts; evidence indicating that she had altered and falsified an exam note in the patient chart for Conchita McElwee; testimony from a codefendant suggesting that Mrs. McElwee believed Chriss was "going to save our ass with that book" (i.e., the falsified dispensary log book); and further testimony indicating that Mrs. McElwee told a codefendant to "slow down" the number of prescriptions being submitted to local pharmacies after she was alerted by a pharmacist to suspicious prescriptions emanating from Dr. McElwee's office. Given the volume of both direct and circumstantial evidence implicating Mrs. McElwee in the conduct for which she was convicted, the district court did not err in denying her motion for judgment of acquittal.

2.

With respect to her claim of defective jury instructions: The district court instructed the jury that it could consider evidence of Mrs. McElwee's deliberate ignorance[9] as circumstantial proof of her guilty knowledge, to which Mrs. McElwee objected. "We review an appellant's objection to jury instructions under an abuse of discretion standard, affording the trial court substantial

---

[9] The concept of deliberate ignorance is sometimes characterized as a "charade of ignorance." *See United States v. Lara-Velasquez*, 919 F.2d 946, 951 (5th Cir. 1990). The deliberate ignorance instruction is included as an optional second paragraph to the definition of "knowingly" in the Fifth Circuit Pattern Jury Instructions.

latitude in describing the law to the jurors." *United States v. Santos*, 589 F.3d 759, 764 (5th Cir. 2009) (internal quotation marks and citations omitted). We begin by noting that the deliberate ignorance instruction "should rarely be given," and "is appropriate only when a defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate indifference." *United States v. Peterson*, 244 F.3d 385, 395 (5th Cir. 2001) (internal quotation marks and citations omitted). We have also explained, however, that "the giving of a deliberate ignorance instruction is harmless error where substantial evidence of actual knowledge was presented." *United States v. Ricardo*, 472 F.3d 277, 286 (5th Cir. 2006).

Mrs. McElwee argues that the district court erred in giving a deliberate ignorance instruction because the evidence suggested "only that she was aware of isolated instances of misconduct by Chriss and that she attempted to correct the problem." We are unpersuaded. Although Mrs. McElwee claimed the conspiracy took place without her knowledge, evidence at trial showed otherwise—that Mrs. McElwee personally picked up a significant number of the hydrocodone prescriptions from local pharmacies, and that other employees delivered prescriptions to Mrs. McElwee. In addition, the prosecution elicited evidence that Mrs. McElwee took part in the fabrication and falsification of patient records, that she knew about invalid prescription orders and was fully aware of a fake dispensary log book created by Chriss. In the light of this evidence, we need not determine whether the deliberate ignorance instruction was error. There was substantial evidence of actual knowledge before the jury, such that even an erroneous instruction as to deliberate ignorance was harmless.

3.

Mrs. McElwee further appeals the district court's denial of her request for a jury instruction that simple possession of a controlled dangerous substance, 21 U.S.C. § 844(a), is a responsive verdict to the offense of obtaining a controlled

substance by fraud, 21 U.S.C. § 843(a)(3), because it is a lesser-included offense. "A defendant is entitled to a lesser-included-offense instruction if (1) the elements of the lesser offense are a subset of the elements of the charged offense and (2) the evidence at trial is such that a jury could rationally find the defendant guilty of the lesser offense yet acquit him of the greater." *United States v. Finley*, 477 F.3d 250, 255 (5th Cir. 2007). "We review the district court's determination on the first prong of the above two-part test (whether the lesser offense is included in the greater offense) *de novo*. . . . We review the court's determination on the second prong (whether a jury could rationally acquit on the greater offense yet convict on the lesser) for abuse of discretion." *Id.* at 256 (internal citations omitted).

Section 843(a)(3) of Title 21 provides that it is unlawful knowingly or intentionally to "acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge." Section 844(a) provides that it is unlawful knowingly or intentionally to "possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice . . . ." It is difficult to conceive of a case in which the former offense would not also include the latter. Notwithstanding that observation, in this case it is clear that the evidence implicating Mrs. McElwee in the scheme to obtain controlled substances by fraud was so substantial that no rational juror could convict on possession but acquit on fraudulent acquisition. The record reflects that Mrs. McElwee personally picked up large amounts of hydrocodone in her name, that she falsified at least one patient's medical chart, and that she knew about other employees' illicit purchases of hydrocodone as well as the attempt to cover it up by creating a fake log book. It would thus defy reason to conclude (1) that Mrs. McElwee knowingly possessed hydrocodone without a

valid prescription but (2) employed no misrepresentation in doing so.[10] Having reviewed the record, we are convinced that the evidence establishing Mrs. McElwee's knowing participation in the fraudulent scheme was such that no rational juror could convict her of illegally possessing hydrocodone yet acquit her of fraudulently acquiring it.

4.

We turn finally to Mrs. McElwee's challenge to her sentence. Although Mrs. McElwee's Guidelines range was zero to six months, the district court sentenced her to 36 months in prison. We note, as a preliminary matter, that notwithstanding some confusion in the record as to whether the Government made a motion for a sentence exceeding the Guidelines range, the district court clearly imposed a non-Guidelines sentence in this case.[11]

The focus of our inquiry is the reasonableness of the sentence in the light of the totality of the circumstances. In conducting this review, we begin by noting that the district court committed no significant procedural error. The district court "correctly calculated the Guidelines range, treated the Guidelines as advisory, considered the § 3553(a) factors, allowed both parties to present arguments as to what they believed the appropriate sentence should be, did not base [Mrs. McElwee's] sentence on clearly erroneous facts, and thoroughly

---

[10] She did not, for example, obtain hydrocodone simply by purchasing it from a third party; the evidence indicates that she received hydrocodone directly from pharmacies, in her own name even, and that the amount she obtained exceeded the authorization of any valid prescription.

[11] Both parties agree that the Government never filed a written motion requesting an upward departure. Moreover, the record is confusing as to whether the Government made even an oral motion for an upward departure. The record is clear, however, that during the sentencing hearing the district court certainly characterized the Government's position as a request for an upward departure—to which the prosecutor agreed, and to which defense counsel made no objection. Ultimately, the district court made clear that the sentence should be "characterized as a non-Guideline sentence under Section 3553(a)," and the court checked the appropriate box in Section IV of the Statement of Reasons and set forth the facts justifying this sentence in Section VI.

documented its reasoning." *Herrera-Garduno*, 519 F.3d at 530 (citing *Gall*, 552 U.S. at 51–53).

Mrs. McElwee contests some of the factual findings of the district judge, who also presided over the trial and was thus intimately familiar with the record. Many of her arguments in this respect border on the conclusory and, in any event, they are unavailing. For example, she argues that "[t]here is nothing in this record to suggest that Ava McElwee was 'in the thick' of the illegal activity occurring at the office," relying on the fact that Mrs. McElwee worked in the office only on a part-time basis. There was ample evidence, however, before the district court—including Mrs. McElwee's handwriting on a falsified exam note and her comment to another office employee that Wendy Chriss was "going to save our ass with that [falsified dispensary log] book"—from which the court could quite reasonably conclude that Mrs. McElwee was "in the thick" of the conspiracy. As the Supreme Court has explained, "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *Gall*, 552 U.S. at 51 (internal quotation marks and citation omitted). With respect for this institutional advantage, and having reviewed the sentencing transcript and the trial record, we perceive no clear error in the district court's factual findings.

We thus turn to the substantive reasonableness of Mrs. McElwee's sentence. "In reviewing a challenge to the length of a non-Guidelines sentence, we may 'take the degree of variance into account and consider the extent of a deviation from the Guidelines.'" *Herrera-Garduno*, 519 F.3d at 530 (quoting *Gall*, 552 U.S. at 47). "The farther a sentence varies from the applicable Guideline sentence, the more compelling the justification based on factors in section 3553(a) must be." *Smith*, 440 F.3d at 707. "A non-Guideline sentence

unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *Id.* at 708. We must, however, "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51. Furthermore, "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.*

Mrs. McElwee argues primarily that the district court improperly relied upon her marital relationship with Dr. McElwee as a basis for her level of involvement in the conspiracy. During the colloquy at sentencing and in the Statement of Reasons, the court did "note[] the heightened duties on behalf of [Mrs. McElwee], a licensed nurse practitioner and the spouse of the physician involved." Indeed, the court made several references to the spousal relationship in the course of the extensive sentencing colloquy, although the object in doing so was apparently to emphasize what Mrs. McElwee likely had *knowledge* of given her relationship to the conspiracy's "ringleader." We cannot conclude that the court's inferences about Mrs. McElwee's knowledge as the spouse of Dr. McElwee constitute error, particularly given the substantial other evidence—including her own statements to coconspirators, her falsification of an exam note in a patient chart, and her substantial involvement in retrieving hydrocodone prescriptions from pharmacies—indicating that Mrs. McElwee had knowledge of what was going on in the office.[12] Moreover, in discussing her level

[12] Mrs. McElwee counters by highlighting the fact that she and her husband spent much of their office time in separate rooms of the physician's office. She thus argues that the district court erred in assuming that she would know about Dr. McElwee's hydrocodone addiction. It is apparent to us, however, that the court's statements in this respect must be read in context. For example, the district judge observed during the colloquy that Dr.

of involvement, the district court seemed to place greatest emphasis on her role as a nurse practitioner—a higher position than that of a medical assistant such as Wendy Chriss, with substantially greater responsibilities and more supervisory authority. The sentencing court concluded that the higher responsibility of a nurse practitioner entails a concomitantly greater abuse of trust with respect to patients and the medical profession. He thus sought to avoid unwarranted disparities by placing Mrs. McElwee between Dr. McElwee and Chriss, a lower-ranking medical assistant, in the order of sentence severity.

The district court underscored that it was considering acquitted conduct and the testimony of other coconspirators in devising an appropriate sentence for Mrs. McElwee. He noted that the Guidelines are "woefully inadequate" in this case because they "do not appropriately capture the breadth, scope, and nature of the conspiracy for drug distribution." He further explained that, with respect to Mrs. McElwee's role in the conspiracy, "[t]he most telling part of it appears to be, to me, the drug dispensary notebook that was put together to

---

McElwee had a "10-to-12-Lortab-a-day habit" and was using the drug while operating on patients. The court explained its concerns thus:

> You know, at what point are you supposed to recognize that in terms of behavior? She's not an ordinary nurse. She's certainly not an administrative assistant. She's a nurse practitioner. It does not appear that she, herself, was involved in a substance abuse addiction or in the substance abuse at all. On the other hand, her husband's involvement with it is undeniable. And on a 24/7 basis with these two that were portrayed as close and doing stuff, with Ms. McElwee being in the operating room and everything else, what other reasonable conclusions that you can [*sic*] draw from that in looking at how the Guideline is supposed to capture the criminal behavior?

In the light of statements such as the foregoing, we do not understand the district court to have reached the factual conclusion that Dr. and Mrs. McElwee were in each other's presence at all times. On the contrary, the court's clear point is that given Mrs. McElwee's level of training as a nurse practitioner and her interaction with her husband at home as well as at the office, including during some surgical procedures, her position that she knew nothing about his Lortab addiction borders on the inconceivable. Again, her position must be viewed in the light of all the evidence incriminating Mrs. McElwee, and we owe substantial deference to the district court's conclusions.

show false entries, false medical records even; the use of the McElwees' dog, Brand[i], in prescriptions; the use of the daughter-in-law's name, Conchita McElwee, also in multiple forms . . . ." The record contains evidence connecting Mrs. McElwee to all of these aspects of the conspiracy. Under these facts, it is not our place to second-guess the district court's conclusion that Mrs. McElwee's culpability requires a significantly greater sentence than the Guidelines suggest.[13]

Still, we are struck that Mrs. McElwee's 36-month prison sentence, although within the statutory maximum, is fully six times the maximum sentence suggested by the Guidelines. We emphasize that such variance demands thorough justification. Here, the district court did just that. The court explicitly considered the § 3553(a) factors, Mrs. McElwee's personal history and characteristics, the absence of a prior criminal record, her level of involvement and responsibility in the offense, the severity and scope of the conspiracy for which she was convicted, and the need to avoid unwarranted sentence disparities among similarly situated defendants. We perceive no failure to account for a factor that should have received significant weight, reliance on an improper factor, or clear error of judgment in balancing the relevant considerations.

In conclusion, it bears remarking that we have upheld substantial Guidelines deviations in other post-*Booker* cases where the district court based its upward variance on permissible, properly spelled-out considerations. *See, e.g., United States v. Key*, 599 F.3d 469, 475–76 (5th Cir. 2010), *cert. denied*, 131 S.Ct. 997 (2011) (upholding sentence of 216 months where Guidelines maximum was 57 months); *United States v. Smith*, 417 F.3d 483, 492 (5th Cir. 2005) (upholding sentence of 120 months where Guidelines maximum was 41 months);

---

[13] In this respect, we note further that Mrs. McElwee put the Government to its burden of proof in this case, while Chriss pleaded guilty and accepted responsibility for her conduct.

*United States v. Saldana*, 427 F.3d 298, 312–13 (5th Cir. 2005) (upholding sentence four times the Guidelines maximum despite "misgivings about the length of th[e] sentence"). Thus, we hold that the district court did not abuse its discretion, and consequently we affirm Mrs. McElwee's non-Guidelines sentence.

C.

Finally, we consider Wendy Chriss's three-part challenge to her sentence. Chriss was assessed an offense level of 16 with a criminal history category of I. The district court imposed a 21-month sentence of imprisonment followed by three years of supervised release. This sentence was at the bottom of the Guidelines range of 21 to 27 months.

1.

Chriss first argues that the district court erred in denying her the benefit of the safety-valve adjustment under the Guidelines. The Guidelines provide that a defendant's offense level must be reduced by two levels if she meets five conditions, including the following relevant provision:

> (5) [N]ot later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2(a); *see id.* § 2D1.1(b)(11). *See also* 18 U.S.C. § 3553(f). On appeal, the parties dispute whether Chriss met this fifth criterion for the safety-valve adjustment. We review a sentencing court's decision whether to apply the safety valve for clear error. *See United States v. McCrimmon*, 443 F.3d 454, 457 (5th Cir. 2006). Chriss bears the burden of establishing that she is entitled to the adjustment. *Id.*

The Government argues that Chriss failed to truthfully debrief regarding several specific instances. For example, she denied ever selling hydrocodone to an individual named Trey Jacobe, but Jacobe testified to the contrary at trial. The Government further notes that Chriss was less than completely truthful about when she stopped working for Dr. McElwee. Moreover, Chriss maintained that she acted pursuant to Dr. McElwee's direction, but the evidence at trial only partially supported this proposition. Chriss has failed to rebut these contentions and relies on the simple response that she "truthfully disclosed all the information she had concerning the offense" and "accepted responsibility for her conduct" by pleading guilty. Consequently, by failing to say more than this, she has failed to meet her burden of showing that the district court erred.

2.

Chriss further argues that the district court erred by denying her the benefit of a two-level reduction in her offense level, contending that she was only a minor participant in the conspiracy. The Guidelines provide for a two-level reduction "[i]f the defendant was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). This reduction applies to a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* Application Note 5. "It is not enough that a defendant does less than other participants; in order to qualify as a minor participant, a defendant must have been peripheral to the advancement of the illicit activity." *United States v. Villanueva*, 408 F.3d 193, 204 (5th Cir. 2005). Whether Chriss was a minor participant is a factual determination reviewed for clear error. *Id.* at 203.

Chriss argues that she was "clearly less culpable in the offense than others," but her only apparent support for this contention is that she operated at the instruction of Dr. McElwee, who "fed" her addiction. Chriss's argument is insufficient to demonstrate clear error, particularly in the light of her failure to address the district court's findings that she was the conduit through whom

many of the hydrocodone pills were illegally obtained, and that she personally placed and signed for many of the orders using false prescriptions.

3.

Finally, Chriss disputes the substantive reasonableness of her sentence. Again, we review the substantive reasonableness of a sentence for abuse of discretion, considering the totality of the circumstances and affording deference to the district court's application of the § 3553(a) factors. *See Gall*, 552 U.S. at 51; *Diaz*, 637 F.3d at 603. We start by noting that Chriss's 21-month sentence is at the bottom of the 21-to-27 month Guidelines range for her offense level of 16 and criminal history category of I. A sentence within the Guidelines range is presumptively reasonable. *Diaz*, 637 F.3d at 603. Nevertheless, Chriss asserts that her sentence is greater than necessary to achieve the goals set forth in § 3553(a).

Chriss submits that she is remorseful for her conduct; that she was addicted to hydrocodone at the time of the conspiracy and has sought treatment to overcome this addiction; that she does not have a history of criminal behavior; that she has two minor children who will be forever harmed by her incarceration; and that she has accepted responsibility and desires rehabilitation. These arguments will not rebut the presumption of reasonableness that we must attach to her Guidelines sentence. That presumption "is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." *Diaz*, 637 F.3d at 603 (internal quotation marks and citations omitted).

Applying these considerations here, Chriss has not pointed to any specific errors of judgment in the district court's balancing of the § 3553(a) factors. Moreover, the district court made explicit factual findings justifying the sentence

in accordance with the § 3553(a) factors. These findings included her role as "one of the point people" who facilitated the conspiracy, the length of time during which she engaged in the conspiracy, and her willingness to assist others in obtaining hydrocodone. The court further took into account her lack of criminal history and personal characteristics in devising an appropriate sentence. Chriss has presented no evidence to call into question the district court's factual determinations or its balancing of the § 3553(a) factors. Consequently, we hold that her Guidelines sentence is substantively reasonable.

III.

We conclude by summarizing our holdings in this case: With respect to Dr. McElwee, we affirm the 60-month sentence and the $550,000 fine imposed by the district court. As to Mrs. McElwee, we conclude that the evidence was sufficient to support her conviction, that the district court committed no error affecting her substantial rights in its issuance of instructions to the jury, and that the district court did not abuse its discretion in sentencing her to a 36-month term of imprisonment. Finally, we affirm Wendy Chriss's 21-month sentence, including the district court's denial of the safety-valve reduction and its refusal to apply a reduction for her role in the offense.

AFFIRMED.

RECEIVED
AUG 05 2011
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

# United States Court of Appeals

FIFTH CIRCUIT
OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

August 03, 2011

Mr. Tony R. Moore
Western District of Louisiana, Shreveport
United States District Court
300 Fannin Street
Suite 1167
Shreveport, LA 71101-0000

No. 10-30099, Consolidated with 10-30101
USA v. Tandy McElwee, Jr., et al
USDC No. 5:08-CR-269-1
USDC No. 5:08-CR-269-3

Enclosed, for the Western District of Louisiana, Shreveport only, is a copy of the judgments issued as the mandate.

Enclosed, for the Western District of Louisiana, Shreveport only, is a copy of the court's opinion.

Record and exhibits to be returned.

The electronic copy of the record will be recycled.

Sincerely,

LYLE W. CAYCE, Clerk

By: Dantrell Johnson
Dantrell L. Johnson, Deputy Clerk
504-310-7689

cc: (letter only)
Honorable S. Maurice Hicks, Jr.
Ms. Josette Louise Cassiere
Ms. Marilyn Michele Fournet
Mr. Douglas Lee Harville
Mr. Ansel Martin Stroud, III
Mr. Michael Allyn Stroud
Mr. Alexander Coker Van Hook

P.S. to Judge Hicks: A copy of the opinion was sent to your office via email the day it was filed.